UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 1 1 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-657-GWU

JAMES R. HACKER,                                        PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hacker

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.   Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Hacker

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hacker

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hacker

One of the residual functional capacity levels used in the guidelines, called
"light" level work, involves lifting no more than twenty pounds at a time with frequent
lifting or carrying of objects weighing up to ten pounds; a job is listed in this category
if it encompasses a great deal of walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg controls; by definition, a
person capable of this level of activity must have the ability to do substantially all
these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the
capacity to lift no more than ten pounds at a time and occasionally lift or carry small
articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a),
416.967(a).

However, when a claimant suffers from an impairment "that significantly
diminishes his capacity to work, but does not manifest itself as a limitation on
strength, for example, where a claimant suffers from a mental illness . . .
manipulative restrictions . . . or heightened sensitivity to environmental contaminants
. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,
905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the
Commissioner may still use the rules as a framework for decision-making, 20 C.F.R.
Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term
"framework" in the text of the decision is insufficient, if a fair reading of the record
reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Hacker

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments.  Varley  v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Hacker suffered from
depression, anxiety, morbid obesity and hypertension.  (Tr. 28).  He concluded that
the plaintiff had no exertional limitations, such as: (1) a "fair" ability to relate to
coworkers, deal with the public, interact with supervisors, deal with work stresses,
function independently, maintain attention and concentration, handle detailed but not
complex job instructions, behave in an emotionally stable manner and demonstrate
reliability, (2) an ability to work best out of direct contact with the public in low stress,
non-production work, and (3) a "poor" ability to handle complex job instructions.
(Id.).  The plaintiff was found unable to perform his past relevant work, but able to
engage in a significant number of specific jobs available at the medium level, as
identified by a vocational expert (VE).  (Tr. 28-29).

One great difficulty for the plaintiff is the fact that the appropriate period for
consideration was somewhat narrow.  His amended onset date was August, 1999

7

Hacker

(Tr. 314) and the Date Last Insured (DLI) was June, 2002 (Tr. 28, 301), meaning that the plaintiff would have to establish disability between those two dates.

As far as the plaintiff's "severe" physical impairments were concerned, the ALJ's findings appear to have been almost gratuitous and, certainly, the vocational expert's listing of jobs at no more than the medium exertional level (Tr. 400) appears to have been more than adequate. As of late 2002, a treating source for his urinary conditions felt that they were not disabling (Tr. 178, 179); a medical reviewer felt that these urinary conditions were less than "severe" (Tr. 221). Dr. Becknell listed one physical condition on a 2003 assessment form which was said to cause functional limitations, moderate low back pain (Tr. 240), yet the notations on the form cited no deformities, reflex changes or x-ray results (Tr. 239)[1] and the progress notes from his own clinic listed only one office visit focusing on complaints of back pain, with no musculoskeletal findings (Tr. 148-149). Thus, Becknell's musculoskeletal restrictions were not worthy of binding weight and, indeed, Becknell mentioned no musculoskeletal or cardiovascular problems in a subsequent letter (Tr. 253). In Becknell's progress notes that were completed within the appropriate period, the plaintiff had reportedly been mowing the lawn as of early 2002 and his hypertension was said to have been controlled and uncomplicated (Tr. 146) and, shortly after the

---

[1]An April 2003 lumbar spine x-ray, found elsewhere in the record, was apparently normal. (Tr. 264).

8

Hacker

relevant period his gait was described as normal and it was noted that he had had no chest pain for some time (Tr. 139-140).

The plaintiff's more serious problem appears to have been his mental status and, indeed, early statements from the plaintiff and his family indicate that he had stopped working mainly for this reason (Tr. 88, 105, 112). However, information about his mental status appears somewhat conflicting.

Three exhibits, in particular, suggest that the plaintiff's mental status was <u>not</u> disabling. A medical reviewer characterized the mental condition as less than "severe." (Tr. 223). Treating Psychiatrist Patel's progress notes from December, 1999 through September 5, 2002 uniformly describe the plaintiff as, in fact, alert, oriented, with focused attention, good eye contact, normal psychomotor activity, coherent speech, logical or goal-oriented thought, intact judgment, intact memory, average intelligence, and a full affect. (Tr. 186, 188, 190, 191, 193, 195, 198, 200, 202, 204, 206, 208, 210); out of the 13 progress notes during the period, only in two instances was the plaintiff's mood described as other than "appropriate" (e.g., Tr. 188, 195). In mid-October, 2002, also, (four months after the DLI) the plaintiff saw Consultative Examiner Jack Eardley (Tr. 154) who opined that the plaintiff did not manifest a psychotic reaction, displayed no signs of intellectual deterioration, and showed no impaired ability to relate during the interview; a depressive disorder "by

Hacker

interview;" a depressive disorder "by claimant's statements" was the only diagnosis. (Tr. 157).[2]

On the other hand, Treating Psychiatrist I. Patel had, when he first saw the patient in September, 1999, cited a current GAF of 40[3] (Tr. 219) and noted a sad mood in three out of four progress notes between the September, 1999 intake and November 11, 1999 (Tr. 213, 215, 219) and psychomotor agitation was noted twice (Tr. 216, 219). On the last progress note, the psychiatrist reported decreased crying, the fact that Hacker was reportedly tolerating his medication well and "he has started to drive." (Tr. 213). This suggests that the plaintiff's mental condition was disabling, but only for a very limited period under 12 months in duration. A 2004 letter from Dr. Becknell confirms that the plaintiff had an episode of suicidal ideation and a breakdown in August, 1999 (Tr. 253); while Becknell indicated that it was his belief that Hacker had been disabled since that time, he also admitted in this and another evaluation report that the plaintiff's mental health had been followed and treated by others (Tr. 242, 253).

---

[2]After the DLI, an additional consultative examination brought only a diagnosis of slight malingering (Tr. 270) and at least "satisfactory" mental abilities in everything except handling complex or detailed job instructions (Tr. 272-273). A medical expert who testified at the hearing also listed all "satisfactory" abilities except for handling complex job instructions. (Tr. 288-289).

[3]A GAF of 40 is consistent with an inability to work as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

Hacker

On the other hand, the ALJ erred in citing a "high school education" in the hypothetical question. (Tr. 399). From a colloquy with the medical expert (Tr. 353-355), it appears that "Special Ed" was marked on the plaintiff's eighth grade report (Tr. 133), a fact that the expert somewhat disingenuously tried to downplay. The exhibit also cited aptitude test results from when the plaintiff was in the ninth grade indicating only a tenth percentile score in reasoning, a third percentile score in spelling and a first percentile score in mathematics (Tr. 136); according to the medical expert, achievement or aptitude tests measured how much and how well the person was learning in the educational system (Tr. 361). The only WRAT scores reported as an adult showed a fourth grade reading ability (Tr. 269), based on "slight" malingering (Tr. 270). The ALJ, at the 2004 administrative hearing, engaged in a series of argumentative remarks denying that the plaintiff's education or literacy was an issue (Tr. 315-316, 329-334), despite the fact that an aunt and his wife had already submitted statements that the plaintiff could only read at a third grade level and did not understand how to handle money (Tr. 101, 105) and the plaintiff himself had mentioned his low literacy on a Background Questionnaire (Tr. 123).

In discussing the plaintiff's literacy in the text of the decision, the ALJ mentioned only that the plaintiff "admitted that he went to a regular high school and received Cs and Ds, contrary to attempts to corroborate illiteracy." (Tr. 26). As noted previously, there were many other factors to be considered regarding the

11

Hacker

plaintiff's educational level. Second, the plaintiff was not necessarily arguing that he was completely illiterate as the ALJ implied, but rather at something less than the "high school level." Third, his school records reveal that the plaintiff received Ds and an F in English in the 10, 11, and 12th grades and his mathematics courses are somewhat unclear during that time--approximately one-half year in the 10th grade, none in the 11th, and one-half year of what appears to be "Math 1" in the 12th grade. (Tr. 128).

The case will be remanded for further consideration of Hacker's educational level.[4]

This the ___/ /___ day of October, 2006.

_G. WIX UNTHANK_
SENIOR JUDGE

_____

[4]The Court will not rule on the motion to file newly discovered evidence, as the case is being remanded on other grounds. Presumably, the plaintiff will be allowed to introduce any evidence relating to his education, or his condition prior to the 2002 Date Last Insured.

12